UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:20-cr-00025-DJC |
| Plaintiff, | |
| v. | ORDER |
| LUIS HERNANDEZ-GUZMAN & FERNANDA AYALA ZAMORA | |
| Defendant. | |

Defendants Luis Hernandez-Guzman and Fernanda Ayala Zamora move this court to (1) suppress physical evidence obtained during their November 4, 2019, traffic stop, and (2) suppress all statements made by Defendants to the police as fruits of the poisonous tree as a result of the alleged Fourth Amendment violations. (Mot. (ECF No. 77) at 2.) An evidentiary hearing was held on September 26, 2024.

After considering the parties' evidence and arguments, this Motion is DENIED.

**BACKGROUND**

On Monday, November 4, 2019, Defendants Guzman and Zamora were stopped by California Highway Patrol (CHP) Officer Justin Haynes who observed them following a semi-truck without sufficient stopping space while driving northbound on the Interstate 5. (Mot. 2–3.) Upon approaching the vehicle, Officer Haynes noticed that the center console of the car had snack food and a beverage in it and that there

was a single key in the ignition without a keychain.  (*Id.* at 3; Mot. Ex. B at 8.)  Officer Haynes asked the driver, Guzman, for his license and to exit the vehicle so that they could speak near the patrol vehicle away from traffic.  (Ex. B at 9; Reporter's Transcript of Sept. 26, 2024 Evidentiary Hearing (ECF No. 103) at 16–17.)  Guzman complied.  (Ex. B at 9.)

When both Guzman and Officer Haynes were next to the patrol car, Officer Haynes told Guzman he would give him a written warning form (CHP214 form) for following the semi-truck too closely.  (*Id.*)  Officer Haynes then asked Guzman where he was travelling to, to which Guzman replied that he and Zamora, his passenger, were driving to a wedding in Eugene, Oregon, where Guzman would perform as part of a wedding band.  (Ex. A at 4:20–7:00)  When Officer Haynes noted that Eugene was a long way off, Guzman responded that he had a brother in Washington.  (*Id.*)  Officer Haynes then asked Guzman whose wedding it was, and Guzman responded that it was "my brother Roberto and one of his friends."  (*Id.*)  Officer Haynes again asked whose wedding it was, to which Guzman replied, "my friend, Roberto."  (*Id.*)  Guzman then clarified that Roberto was his friend, and that Guzman's brother lived in Washington.  (*Id.*)  Guzman also told Officer Haynes that Guzman and Zamora were to stay at "my brother's friend's house" for the wedding.  (*Id.*)  Finally, Officer Haynes asked Guzman who the owner of the car being driven was, to which Guzman replied that it was Zamora's.  (*Id.*)

Officer Haynes then walked to the passenger side of the vehicle and asked Zamora for the car's registration and insurance.  (Ex. B at 9–10.)  She responded in Spanish, but Officer Haynes did not understand her response.  (*Id.*)  He then asked her again, this time in Spanish, and she opened the glove box, appearing to look for the registration.  (*Id.*)  While she was searching, Officer Haynes asked her about the trip to Oregon, but he could not understand her answer, other than that she responded "Portland."  (*Id.*)  Officer Haynes noted in his report of the traffic stop that Zamora was evasive and did not look at him when they spoke.  (*Id.*)  Zamora eventually gave

Officer Haynes the registration, and Officer Haynes noted that the car had been purchased six weeks earlier. (*Id.*) Officer Haynes then radioed Officer Collin Lowry, a nearby CHP officer who is fluent in Spanish, for assistance. (*Id.* at 10)

Officer Haynes returned to talk to Guzman, asking him if there were any illegal items in the vehicle. (*Id.*) Guzman denied having any contraband. (*Id.*) Officer Haynes then asked Guzman if he would consent to a search of the vehicle; Guzman verbally approved the search. (*Id.* at 11.) Officer Haynes also provided him a CHP202D Consent to Search form, which Guzman signed. (*See id.* at 15.)

Officer Lowry then arrived on the scene. Officer Haynes expressed that he was suspicious of Guzman and Zamora's conflicting answers about the trip to Oregon and that he felt that there were additional indications of criminal activity. Specifically, Officer Haynes was concerned by the food and beverage in the center console, sole key in ignition, recent car registration, and nervous demeanor of Guzman and Zamora. (*Id.* at 11.) Officer Lowry then spoke with Zamora in Spanish; Zamora told him that she and Guzman were driving to Oregon but that she did not know their exact destination. (Ex. C at 17.) She also told him that Guzman was scheduled to play a music gig, but she did not know who had booked him. (*Id.*) In his report on the incident, Officer Lowry noted that he became suspicious during his conversation with Zamora because she did not mention the wedding, did not know where she was headed to in Oregon, and did not know who had booked Guzman for the performance. (*Id.* at 18.) During this conversation, he also noted the food and beverage in the center console, the single key in the ignition, and additionally, that the carpet on the vehicle's floor appeared different than the standard carpet that would be in that sort of vehicle. (*Id.* at 17.)

Officer Lowry asked Zamora whether there were any illegal items in the car, to which she became "very animated" and denied having any contraband. (*Id.* at 17–18.) Officer Lowry then alleges he asked Zamora for verbal consent to search the car,

which she granted.[1] (*Id.* at 18.)

The officers conferred and noted their shared suspicion of Guzman and Zamora's story. (*Id.*) They asked Zamora to exit the car, after which they began to search the vehicle. (Ex. B at 11.) In his report on the incident, Officer Haynes noted that during the search it became clear that the carpet was not the original carpet installed in the vehicle. (*Id.* at 12.) The officers pulled back the carpet and found beneath it a hidden compartment filled with cellophane-wrapped bundles that appeared to be methamphetamine. (*Id.*) In total, the officers retrieved twenty-five packages from the compartment, weighing approximately one pound each. (*Id.* at 13.) The officers also found a grocery bag under the passenger seat of the vehicle containing approximately one kilogram of heroin. (*Id.*) The officers then arrested Guzman and Zamora.

## LEGAL STANDARD

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated and no warrants shall issue, but upon probable cause." U.S. Const. amend. IV. An automobile stop by a police officer is a seizure within the meaning of the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). An officer who has reasonable suspicion to believe that a violation of traffic laws has occurred may properly stop and detain a vehicle and its occupants to investigate the infraction. *Whren v. U.S.*, 517 U.S. 806, 810 (1996).

Under the Fourth Amendment, a seizure for a traffic stop is a "relatively brief encounter," "more analogous to a so-called *Terry* stop than to a formal arrest." *Rodriguez v. U.S.*, 575 U.S. 348, 354 (2015) (quoting *Knowles v. Iowa*, 525 U.S. 113, 117 (1998)); see also *Terry v. Ohio*, 392 U.S. 1 (1968). A traffic stop must be limited in

---

[1] This fact is contested, but ultimately not relevant, because as discussed below, the Court deems Guzman's consent to search the vehicle to be valid.

4

its scope: an officer may "address the traffic violation that warranted the stop," make "ordinary inquiries incident to the traffic stop," and "attend to related safety concerns." *Rodriguez*, 575 U.S. at 354–55, (quotations and alterations omitted). But the duration of the stop may be "no longer than is necessary to effectuate" these purposes and complete the traffic "mission" safely. *Id.* (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983) and *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)).

An officer may prolong a traffic stop, however, "if the prolongation itself is supported by independent reasonable suspicion." *U.S. v. Evans*, 786 F.3d 779, 788 (9th Cir. 2015); *U.S. v. Mendez*, 476 F.3d 1077, 1080 (9th Cir. 2007). Reasonable suspicion "exists when an officer is aware of specific, articulable facts which, when considered with objective and reasonable inferences, form a basis for particularized suspicion." *U.S. v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000). A stop may be extended for the time required to investigate those matters that have sparked "reasonable suspicion of an independent offense." *U.S. v. Taylor*, 60 F. 4th 1233, 1239 (9th Cir. 2023) (quoting *U.S. v. Landeros*, 913 F.3d 862, 867 (9th Cir. 2019)). Courts look to the "totality of the circumstances" to determine whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. *U.S. v. Arvizu*, 534 U.S. 266, 273–74 (2002). In conducting this review, courts defer to factual inferences of the officers on the scene. *Id.*

If a stop is found to be illegitimate, a criminal defendant may move to invoke the exclusionary rule to suppress evidence obtained in violation of the Fourth Amendment. *See, e.g.*, *U.S. v. Calandra*, 414 U.S. 338, 341 (1974); Fed. R. Crim. P. 41(h). The exclusionary rule covers not just evidence obtained as a direct result of the illegal search or seizure, but also evidence derived from that illegality, which is considered fruit of the poisonous tree. *U.S. v. Ngumezi*, 980 F.3d 1285, 1291 (9th Cir. 2020).

////

////

**DISCUSSION**

Officer Haynes properly initiated a traffic stop due to Guzman's unsafe driving. During the effectuation of that traffic stop, Officer Haynes noticed several factors that supported a reasonable suspicion that a separate crime was occurring. There is sufficient evidence that Officer Haynes did not prolong the stop until those suspicious factors arose. During that time, Guzman—the driver of the car—properly consented to a search of the vehicle.

**I.    Officer Haynes had a valid reason to pull over Guzman and Zamora**

It is a traffic violation to follow a semi-truck too closely. Cal. Veh. Code § 21703. Uncontroverted video evidence obtained from Officer Haynes' patrol car shows that Guzman and Zamora's vehicle was tailing a semi-truck at approximately 60 miles per hour, an unsafe distance at the speed the vehicles were travelling. (*See* Ex. A at 0:20–1:00.) After viewing Defendants' vehicle travelling behind the semi-truck at unsafe speeds, Officer Haynes properly initiated a traffic stop and directed Defendants to pull over. *See Whren v. U.S.*, 517 U.S. at 810.

**II.   Officer Haynes did not prolong the traffic stop until after he developed a reasonable suspicion of criminal activity based on Guzman's conflicting answers**

An officer can only prolong a traffic stop past the time needed to give an infraction if there is a reasonable suspicion for that prolongment. *Evans*, 786 F.3d at 788. When assessing reasonable suspicion, courts should consider the "totality of the circumstances." *Arvizu*, 534 U.S. at 273–274.

The government points to several factors that it posits led Officer Haynes, and later Officer Lowry, to develop a reasonable suspicion that a non-traffic-related crime was occurring. These factors include: (1) the presence of food and a beverage in the center console; (2) the single car key in the ignition with no attached key ring or other keys; (3) inconsistent answers given by Guzman in response to Officer Haynes' questioning about the trip to Oregon; (4) inconsistent answers and evasive demeanor given by Zamora in response to Officers Haynes and Lowry's questioning about the

trip to Oregon, and her recent car registration; and (5) off-color car floor carpeting that did not match the carpet that would typically be installed in the type of car being driven.  For the reasons discussed below, the Court finds that Officer Haynes did not prolong the traffic stop until he had a reasonable basis for suspecting criminal wrongdoing based on Guzman's, and then Zamora's, conflicting answers.

### A. Officer Haynes did not prolong the traffic stop until after Guzman gave conflicting answers

In his incident report, Officer Haynes noted that upon pulling over Defendants and approaching the vehicle's driver side window, he "immediately noticed there were snack food and a water bottle in the center console" and that there was a single key in the ignition. (Ex. B at 8.)  According to Officer Haynes's training and experience, having sustenance accessible in the car is a "common practice" among people committing crimes "because it maximizes the amount of time they can be traveling on the road, which limits their exposure to law enforcement." (*Id.*)  Similarly, he notes that people committing crimes "will commonly only have a single key in the ignition. This is done to disassociate the driver and occupants of the vehicle with whatever illegal contraband the vehicle contains." (*Id.*)

Standing alone, these factors would be insufficient to support probable cause. Many drivers may have snack food and water in the center console during a long car ride, and drivers may choose not to have anything attached to a key for a variety of reasons.  Critically, despite noticing these factors, Officer Haynes did not prolong the traffic by asking Guzman to exit the car and speak with him by the patrol vehicle.  That is because speaking with and issuing a written warning to a driver are routine elements of a traffic stop, and thus entirely appropriate actions for Officer Haynes to take after witnessing Guzman's driving infraction.  *See U.S. v. Williams*, 419 F.3d 1029, 1030 (9th Cir. 2009) (officers can ask drivers to exit the vehicle during a traffic stop); *see also U.S. v. Garcia*, 205 F.3d 1182, 1187 (9th Cir. 2000) (officers can question

drivers in a traffic stop if those questions are reasonably related to the circumstances that originally justified the stop).

There is no evidence showing Officer Haynes improperly extended the traffic stop while issuing a written warning to Guzman. Indeed, Officer Haynes's questioning of Guzman's travel plans was conducted while Haynes was preparing the written citation. (*See* Ex. A at 4:20-7:00; *U.S. v. Catarino-Sanchez*, 178 Fed. Appx. 691, 692 (9th Cir. 2006) ("Additional conversation between the officers and [Defendants] regarding the purpose of the trip and planned activities was permissible as it took place while the records check was being conducted and did not delay the traffic stop.").) While the form Officer Haynes filled out was short, Haynes testified that he did not extend the time required to conduct the routine stop, at least until he called for assistance for a Spanish-speaking officer (Rep.'s Tr. of Sept. 26, 2024 Evid. Hr'g at 19:1–8), and there is no conflicting evidence before the Court that the line of questioning resulted in Guzman waiting any additional time beyond what was required for Haynes to issue the written warning.

While Officer Haynes was issuing that written warning, however, Guzman offered a number of odd and contradictory comments that provide support for Officer Haynes's suspicion that a crime was occurring. Specifically, Officer Haynes flagged that: (1) Guzman said he was driving to Oregon on Monday for a wedding on Friday; (2) Guzman referred to the wedding being for his "brother Roberto and one of his friends," and then later "for my friend, Roberto"; and (3) Guzman's comments that he was staying at his "brother's friend's house" without mentioning Roberto.

While Guzman's comment that he was travelling to a wedding five days early is not particularly alarming, Guzman's contradictory answers to Officer Haynes's line of questioning regarding whose wedding Guzman was travelling to support a finding of reasonable suspicion. Officer Haynes fairly points out that it is indeed suspicious that Guzman said the wedding was between his brother Roberto and his friend, and then later said the wedding was his friend Roberto's. It is further odd that Guzman would

8

also later say that he was staying at his "brother's friend's house" without mentioning Roberto. These contradictory answers without any explanation by Guzman fairly prompted Officer Haynes to further assess and investigate Defendants' stated story. *See U.S. v. Torres-Sanchez*, 83 F.3d 1123, 1127,1129 (9th Cir. 1996) (inconsistent answers can be a factor that develops reasonable suspicion).

At this point, Guzman had also identified Zamora as the owner of the car, and it was proper for Officer Haynes to speak with her as well. Officer Haynes cites Zamora's contradictory answers and evasive demeanor as further indications that a separate crime could be occurring. Specifically, he notes that although he did not understand most of her responses to him because they were in Spanish, she did mention "Portland" when asked where Defendants were headed. (Ex. B at 9–10.) When following up on her response, Officer Haynes states that Zamora became "evasive toward me," looked away from him, and did not further answer his questions. (*Id.*) He asserts that "[h]er demeanor was so evasive and closed off to me that I found it completely inconsistent with a normal traffic stop and the motoring public."[2] (*Id.*)

The Court finds the fact that Zamora indicated Defendants were travelling to Portland instead of Eugene, which is where Guzman told Officer Haynes the wedding was to take place, to be significant. Considering the previous pattern of irregularities in Guzman's answers, this further inconsistency fairly raised suspicion. So too would the more innocuous facts of the food on the console and a sole key in the ignition have taken on more significance in light of these inconsistencies.

---

[2] While the Court has already found that Officer Haynes reasonably identified a trend of suspicious activity while carrying out duties normally associated with a traffic stop, the Court recognizes that it is not uncommon for people of color, like Zamora, to feel nervous or anxious when interacting with police officers, especially given a history of police mistreatment towards minority communities in the United States and in California. *See U.S. v. Brown*, 925 F.3d 1150, 1157 (9th Cir. 2019) ("There is little doubt that uneven policing may reasonably affect the reaction of certain individuals—including those who are innocent—to law enforcement.") (citing *Illinois v. Wardlow*, 528 U.S. 119, 132 (2000) (conc. opn. of Stevens, J.).

During this line of questioning, Zamora also give Officer Haynes a copy of her car registration, which showed that the car was purchased six weeks prior. Officer Haynes posits that "based on training and experience, subjects who traffic narcotics will often change vehicles on a regular basis. The transferring and rotating of vehicles within a criminal organization makes it difficult for law enforcement to track subjects and complete investigations." (Ex. B at 10.) When weighing all the identified factors together, it is reasonable that Officer Haynes found the situation to be suspicious.

Because he was unable to communicate with Zamora, Officer Haynes then called for assistance from Officer Lowry, who is a Spanish speaker. Accounting for the reasonable concerns raised by Guzman and Zamora's inconsistent answers and Officer Haynes's inability to communicate with Zamora, the Court finds that it was proper for Officer Haynes to prolong the stop and seek assistance from a bilingual officer. *See U.S. v. Verduzo-Verduzco*, No. 1:17-cr-00231-DAD-BAM, 2018 WL 4057270, at *7 (E.D. Cal. Aug. 24, 2018) (finding a traffic stop was not prolonged when an officer's additional questioning about contraband in the vehicle was supported by a reasonable suspicion that defendants were engaged in drug trafficking).

Once Officer Lowry arrived, he was able to converse with Zamora, who told him that they were going to an unknown location in Oregon where Guzman was going to perform in a band. (Ex. C at 17.) She did not mention a wedding. (*Id.*) Officer Lowry followed up, asking if there was any special event taking place in Oregon that weekend. (*Id.*) Zamora responded that Guzman was going to play in a band, but again, did not mention that they were to be attending a wedding of either Guzman's brother or friend, raising concerns about the veracity of the story. (*Id.*)

Officer Lowry notes that when talking with Zamora, he noticed that "the carpet on the floor of the vehicle was not a factory color and did not seem to match the vehicle." (*Id.*) In his subsequent conversation with Officer Haynes, he posits that this factor, along with the previously discussed factors, was an "indication of potential

transportation of illegal items." (*Id.*; *see U.S. v. Lizarraga-Lopez*, 842 F.2d 1295 (9th Cir. 1988) (mismatched carpet in a vehicle can be an indicator of drug trafficking).)

At this stage, there was substantial evidence to support the officers' finding of reasonable suspicion, particularly the diverging and contradictory answers given by Guzman and Zamora. Any delay of the traffic stop from the point at which Officer Haynes asked for a Spanish interpreter, including the time it took to ask for consent to search the vehicle, was therefore justified.

### III. Guzman had actual authority to consent to a search of the vehicle

A driver may consent to a search of a vehicle if they have actual authority to do so. *Espinosa v. City & Cnty. of San Francisco*, 598 F.3d 528, 536 (9th Cir. 2010). "A third party has actual authority to consent to a search of a container . . . if the third party has mutual use of the container and joint access to or control over the container." *U.S. v. Fultz*, 146 F.3d 1102, 1105 (9th Cir. 1998).

Considering the above indicators of potential criminal activity, Officer Haynes asked Guzman for permission to search the vehicle. Here, Guzman, as the driver, had joint access to and control over the vehicle, and thus, had actual authority to consent to a search of the vehicle. *See U.S. v. Morales*, 861 F.2d 396, 399 (3d Cir. 1988) (a driver can consent to a search of a vehicle even when they are not the owner). While it is true that Guzman was outside of the vehicle when Officer Haynes asked to search it, he was still in the physical proximity of the car and was only outside of it to comply with Haynes's reasonable instructions to leave the car so that the two could converse. *See Williams*, 419 F.3d at 1030. Guzman voluntarily signed a consent form to search the vehicle and verbally confirmed that he understood it and his ability to decline the search. (Ex. B at 11, 15; Ex. A at 11:35–12:50.) Therefore, the search was properly consented to by Guzman.

### IV. Fruits of the poisonous tree

"[T]he Fourth Amendment's exclusionary rule applies to statements and evidence obtained as a product of illegal searches and seizures." *U.S. v. Crawford*,

11

372 F.3d 1048, 1054 (9th Cir. 2004). As held above, the search was lawful and the stop was not illegally prolonged. Thus, the Court need not address Defendants' fruits of the poisonous tree argument. *See U.S. v. Parker*, 919 F. Supp. 2d 1072, 1081–82 (E.D. Cal. 2013) (denying a motion to suppress because the contraband produced from a vehicle was the result of a lawful search, not the fruit of any poisonous tree).

## CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that Defendant's Motion (ECF No. 77) is DENIED.

IT IS SO ORDERED.

Dated:   **December 3, 2024**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC5 – 2:20cr00025.mtsuppress